**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**Eastern Division**

|  |  |
|---|---|
| FREDERIC ROLAND, <br> JOSE ANTONIO RAMOS LIMA, <br> FLAVIO LIMA HERCULANO, <br> ALTINO BARROS, and <br> JAILSON PIRES, on behalf of <br> themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CARDINAL LOGISTICS <br> MANAGEMENT CORPORATION, <br> d/b/a CARDINAL HOME <br> DELIVERY CARRIERS, <br><br> Defendant. | Civil Action No. 1:23-cv-11586 |

**PLAINTIFFS' ASSENTED-TO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**I.   INTRODUCTION**

Plaintiffs Frederic Roland, Jose Antonio Ramos Lima, Flavio Lima Herculano, Altino Barros, and Jailson Pires respectfully submit this Motion for Final Approval of Class Action Settlement. Plaintiffs brought this case against brought this case in July 2023 against Defendant Cardinal Logistics Management Corporation, d/b/a Cardinal Home Delivery Carriers ("Cardinal"), alleging that they were misclassified by Cardinal as independent contractors, and that the deductions taken by Cardinal from their pay violated the Massachusetts Wage Act, M.G.L. c. 149 § 148, and that, as a result of its practices, Cardinal was unjustly enriched. See Dkt. 1, Dkt. 19.

Since the case was filed, the Parties exchanged extensive written discovery, and, on June 13, 2024, attended a virtual mediation with Mark Irvings. The mediation did not initially result in

1

settlement, but the Parties remained in contact with Mr. Irvings. On June 21, 2024, the Parties participated in a follow-up mediation session with Mr. Irvings, which resulted in the settlement now before the Court.

Plaintiffs submitted a Motion for Preliminary Approval for the Court's review on July 12, 2024 Dkt. 26. On August 28, 2024, the Court granted Plaintiffs' motion and authorized distribution of the Notice. Dkt 31. To date, Plaintiffs have received no objections and no requests for exclusion from the settlement. The settlement provides for an excellent recovery for the class member – four individuals will receive a *minimum share* in excess of $40,000.00; the average minimum share is in excess of $10,000.00. Plaintiffs' counsel estimate that the settlement represents more than 70% of the class members' damages. The settlement is non-reversionary. To the extent some of the settlement members do not cash their checks in the first distribution, and unclaimed funds remain, the class members who do cash their checks will be eligible for additional payments in the second distribution. Accordingly, individuals who participate in the settlement are likely to recover a higher percentage of their damages.

As described herein, this settlement is a fair resolution of the claims the Plaintiffs have against Cardinal, and Plaintiffs request that this Court approve the settlement pursuant to Fed. R. Civ. P. 23(e). As discussed in more detail below, despite considerable risks to recovery, after payment of fees and incentive payments, Plaintiffs' Counsel will distribute, if approved by the Court, $480,000.00 to class members pursuant to the formula described below. The proposed settlement is, therefore, fair and reasonable, and should receive final approval from the Court.

## II.     PROCEDURAL HISTORY

Plaintiffs Frederic Roland and Jose Antonio Ramos Lima filed the instant case in July 2023, 2023 against Defendant Cardinal Logistics Management Corporation, d/b/a Cardinal Home Delivery Carriers ("Cardinal"), alleging that they were misclassified by Cardinal as independent contractors, and that the deductions taken by Cardinal from their pay violated the Massachusetts Wage Act, M.G.L. c. 149 § 148, and that, as a result of its practices, Cardinal was unjustly enriched. See Dkt. 1, Dkt. 19.

Following an extensive exchange of written discovery, on June 13, 2024, the Parties attended a virtual mediation with Mark Irvings; on June 21, 2024, the Parties participated in a follow-up mediation session with Mr. Irvings, which resulted in settlement.

After the settlement was reached, Plaintiffs submitted a Motion for Preliminary Approval for the Court's review on July 12, 2024. Dkt. 26. On August 28, 2024, the Court granted Plaintiffs' motion and authorized distribution of the Notice. Dkt 31. To date, Plaintiffs have received no objections and no requests for exclusion from the settlement.

On September 16, 2024, Plaintiffs' Counsel received a list of names, addresses, and emails for class members from Cardinal. Plaintiffs' Counsel sent out notice via First Class Mail and email to class members on September 17, 2024. See Declaration of Harold Lichten ("Lichten Decl.") at ¶ 14. Of the notices mailed by Plaintiffs' Counsel, four were ultimately returned as undeliverable. Of the emailed notices, none came back as undeliverable. Lichten Decl. ¶ 15. Class members' deadline to object to or opt out of the settlement is November 1, 2024, and, in the unlikely event any objections or opt-out requests are received by Plaintiffs' Counsel in the next two days, they will promptly notify the Court. Id. ¶ 16.

During the past few weeks, Plaintiffs' Counsel took several steps to ensure that notice had been received by the maximum number of class members. Between October 8 and October 22, 2024, Plaintiffs' Counsel resent the Notice to the class members by first-class mail and e-mail, and made phone calls to class members in an effort to obtain up-to-date contact information for settlement checks. Id. at ¶ 17. By October 22, approximately 20 class members have responded to Plaintiffs' Counsel and confirmed their contact information. Id. at ¶ 18. As stated above, to date, no class members have opted out or submitted objections to the settlement. Id. at ¶ 16.

### III.  TERMS OF THE FINANCIAL SETTLEMENT

The total settlement amount is $795,000.00. Based upon the data provided by Cardinal, the Settlement Class has approximately 47 members and Plaintiffs' Counsel believe that the financial settlement will provide reasonable compensation to the Settlement Class Members for their claims of unlawful deductions under the Massachusetts Wage Act. The settlement is non-reversionary, and any unclaimed settlement checks will be redistributed to the Settlement Class Members who submit a timely and valid Claim Form ("Class Claimants"). Settlement checks that are not cashed, after claims are made, will be paid to a *cy pres* beneficiary, Greater Boston Legal Services.

The parties propose that, if approved by the Court, the Settlement Class Fund of $795,000.00 shall be used to:

1. Pay incentive awards in the amount of $10,000 each to the named Plaintiffs, Frederic Roland, Jose Antonio Ramos Lima, Flavio Lima Herculano, Altino Barros, and Jailson Pires, who actively participated in the litigation and assisted Plaintiffs' Counsel, for a total of $50,000.

2. Pay to Plaintiffs' Counsel attorneys' fees and costs, in an amount not to exceed one-third of the Settlement Class Fund for attorney's fees, litigation and mediation expenses and costs of administering the settlement, in the amount of $265,000.00

3. Distribute the remaining fund ("Net Settlement Fund"), in the amount of $480,000.00 among the settlement class members.

Each settlement class member will receive an amount equal to his or her settlement share, which is based on the number of workweeks meeting the class definition that individual had, relative to the total number of workweeks attributed to all Settlement Class Members according to Cardinal's records. Plaintiffs' Counsel believes this formula, which will provide those class members who performed the most work for Cardinal with the highest shares, is fair and reasonable.

Under Plaintiffs' proposed distribution, each Settlement Class Member will receive 100% of their estimated settlement share in the initial distribution. For the second distribution, if any, each Settlement Class Member will receive a share of the remaining funds based on his share relative to other claiming class members. As stated before, after fees and expenses, each Settlement Class Member will receive at least 70% of his or her estimated actual damages. Lichten Decl. ¶ 13. Any proceeds from uncashed checks after the second distribution will be donated to a *cy pres* beneficiary, Greater Boston Legal Services. Dkt. 29 ¶ 15. In no event shall any settlement funds revert to Cardinal. Id. ¶ 2.

**IV. THE CLASS RECEIVED THE BEST NOTICE PRACTICABLE UNDER THE CIRCUMSTANCES OF THE PROPOSED SETTLEMENT.**

**A. Notice to the Class was More than Adequate.**

Constitutional due process and Federal Rule of Civil Procedure 23(c)(2)(B) require that absent Class Members receive the "best notice practicable under the circumstances." In re Volkswagen & Audi Warranty Extension Litig., 273 F.R.D. 349, 355 (D. Mass. 2011). Notice

5

should be "reasonably calculated to reach the absent class members." Reppert v. Marvin Lumber & Cedar Co., 359 F.3d 53, 56 (1st Cir. 2004).[1] "Rule 23 does not require the parties to exhaust every conceivable method of identifying the individual class members." In re Prudential Ins. Co. of Am. Sales Practices Litig., 177 F.R.D. 216, 232 (D.N.J. 1997) (citing Weinberger v. Kendrick, 698 F.2d 61, 71 (2d Cir.1982) (rejecting the contention that the mailing of individual notice to the last known address of all class members was inadequate), cert. denied, 464 U.S. 818 (1983). Indeed, it is well-settled that notice by first-class mail satisfies the notice requirement of Rule 23.[2]

In this case, Plaintiffs' Counsel have provided notice to Settlement Class Members both by first class mail and by email, with only a handful of the Notices coming back as undeliverable. Lichten Decl. ¶¶ 14-15. Plaintiffs' Counsel also sent follow-up emails and made phone calls to Settlement Class Members, to ensure they have received the Notice. Id. at ¶ 17. As a result of these efforts Plaintiffs' Counsel have obtained responses from 20 of the 47 Settlement Class Members. Id. at ¶ 18. Given Plaintiffs' Counsel's substantial efforts to ensure notice of the class action settlement was actually received by as many class members as possible, in light of the high rate of responses and the absence of any opt-outs or objections, the dissemination of the notice here was more than adequate.

---

[1] See also Serio v. Wachovia Sec., LLC, 2009 WL 900167, at *8 (D.N.J. Mar. 31, 2009) (quoting In re Merrill Lynch TYCO Research Sec. Litig., 249 F.R.D. 124, 133 (S.D.N.Y.2008)) ("[n]otice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as Plaintiffs' Counsel acted reasonably in choosing the means likely to inform potential class members.").

[2] See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173–77 (1974); Zimmer Paper Products, Inc. v. Berger & Montague, P.C., 758 F.2d 86, 90 (3d Cir. 1985); Parks v. Portnoff Law Associates, 243 F. Supp. 2d 244, 249-50 (E.D. Pa. 2003) (notices mailed to class members' last known address held reasonable and adequate).

## V. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND THEREFORE, SHOULD BE APPROVED.

### A. The Legal Standard for Final Settlement Approval.

It is well-established that "the law favors class action settlements." In re Lupron Mktg. & Sales Practices Litig., 228 F.R.D. 75, 88 (D. Mass. 2005) (citation omitted); see also In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004) ("an overriding public interest in settling class action litigation, and it should therefore be encouraged"). Pursuant to Fed. R. Civ. P. 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." The decision of whether to approve a proposed settlement is left to the discretion of this Court. In re Pharm. Indus. Average Wholesale Price Litig., 588 F.3d 24, 32 (1st Cir. 2009).

"The case law offers 'laundry lists of factors' pertaining to reasonableness, but 'the ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement.'" Bezdek v. Vibram USA, Inc., 809 F.3d 78, 82 (1st Cir. 2015) (quoting Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund, 582 F.3d 30, 44 (1st Cir.2009)). Generally, "[i]f the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable." Id. (quoting In re Pharm. Indus. Average Wholesale Price Litig., 588 F.3d 24, 32–33 (1st Cir.2009)). See also City P'ship Co. v. Atl. Acquisition Ltd. P'ship, 100 F.3d 1041, 1043 (1st Cir. 1996) ("when sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement"); Rowland v. Cellucci, 191 F.R.D. 3, 6 (D. Mass. 2000) ("strong initial presumption" of fairness arises where the parties can show that

7

"the settlement was reached after arms'-length negotiations, that the proponents' counsel have experience in similar cases, that there has been sufficient discovery to enable counsel to act intelligently, and that the number of objectors or their relative interest is small").

In determining the fairness of a settlement, many courts in the First Circuit have relied on factors such as:

> (1) [the] risk, complexity, expense and duration of the case; (2) comparison of the proposed settlement with the likely result of continued litigation; (3) reaction of the class to the settlement; (4) stage of the litigation and the amount of discovery completed; and (5) quality of counsel and conduct during litigation and settlement negotiations.

In re Celexa & Lexapro Mktg. & Sales Practices Litig., 2014 WL 4446464, at *5 (D. Mass. Sept. 8, 2014) (quoting In re Tyco Int'l, Ltd. Multidistrict Litig., 535 F.Supp.2d 259, 259–60 (D.N.H.2007)).

### B. The Proposed Settlement Satisfies the Requirements for Final Approval.

As demonstrated herein, the settlement satisfies the criteria for final approval. Although Plaintiffs believe that they have strong and meritorious claims, several concerns have led Plaintiffs' Counsel to conclude that a settlement have led Plaintiffs' Counsel to conclude that a settlement with Cardinal is preferable to proceeding with litigation.  Not only would class certification, summary judgment briefing, and a trial on damages, along with subsequent appellate proceedings, have been costly and time consuming, but the amount of deductions which Plaintiffs and Class Members would ultimately recover at trial is uncertain. Moreover, Cardinal has continued to maintain, throughout the course of this litigation, that the classification of the Settlement Class Members was consistent with Massachusetts law, and that any deductions made form Settlement Class Members' pay did not violate the Massachusetts Wage Act, setting the stage for lengthy and hotly contested litigation.

Based on these considerations, Plaintiffs' Counsel strongly believe that the settlement negotiated in this case is fair, reasonable, adequate and most importantly, is in the best interest of the class. In reaching this conclusion, Plaintiffs' Counsel have spent many hours performing calculations and compiling spreadsheets leading up to mediation. Lichten Decl. ¶ 11. As set out above, the Net Settlement Amount represents approximately 70% of the Settlement Class Members' damages in this case. Id. ¶ 13. The highest *minimum* settlement share is in excess of $50,000.00 and the average share in excess of $10,000.00. Id.

### 1.    The Settlement Negotiations Occurred at Arm's Length.

The Settlement Agreement was negotiated at arm's length by experienced counsel concerning *bona fide* disputes between their clients with respect to liability and damages to Settlement Class Members.  The case presented numerous and vigorously contested issues related to the classification of the Settlement Class Members and whether certain legal defenses provided Cardinal with a complete or partial defense to liability. The Parties have engaged in extensive written discovery, with Plaintiffs' Counsel analyzing detailed pay data provided by Defendant and preparing a detailed damages model. They have engaged in two mediation sessions with a respected mediator. Furthermore, the settlement was negotiated at arm's length in two separate mediations by experienced counsel concerning *bona fide* disputes between their clients with respect to liability and damages. Such arm's length negotiations between capable and experienced counsel is entitled to a presumption of fairness, reasonableness, and adequacy. Rolland v. Cellucci, 191 F.R.D. 3, 6 (D. Mass 2000).

### 2.    Comparison of the Proposed Settlement with the Likely Result of Continued Litigation Favors Final Approval.

"In evaluating the substantive fairness of a class action settlement, the court cannot, and should not, use as a benchmark the highest award that could be made to the plaintiff after full and

successful litigation of the claim. Nor should the court consider cases of particular individual class members to determine whether each and every member of the class receives the fullest possible compensation." Duhaime v. John Hancock Mut. Life Ins. Co., 177 F.R.D. 54, 68 (D. Mass. 1997). See also In re Celexa & Lexapro Mktg. & Sales Practices Litig., 2014 WL 4446464, at *7 ("A settlement need not reimburse 100% of the estimated damages to class members in order to be fair."); O'Brien v. Brain Research Labs, LLC, 2012 WL 3242365, at *15 (D.N.J. Aug. 9, 2012) ("When evaluating the fairness of settlements, courts have held that full compensation is not a prerequisite for a fair settlement."). Yet, Plaintiffs' Counsel estimate that the settlement covers a significant portion of the class members' recoverable damages in this case: the net settlement amount represents more than 70% percent of the class's recoverable damages in this case. Lichten Decl. ¶ 13.

Even where the plaintiffs' claims are strong, a settlement's fairness increases when the recovery of the class members will be substantial. "It must also be remembered that 'a dollar today is worth a great deal more than a dollar ten years from now.'" Schulte, 805 F. Supp. 2d at 583 (quoting Reynolds v. Beneficial Nat. Bank, 288 F.3d 277, 284 (7th Cir. 2002)). As discussed above, the average *minimum* share Settlement Class Members is in excess of $10,000.00 while the largest minimum share is in excess of $50,000.00. The fact that Settlement Class Members are receiving such substantial payments weighs heavily in favor of granting settlement approval.

### 3. There Has Been No Opposition to the Settlement.

The "reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." In re Am. Bank Note Holographics, Inc., 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (citing Sala v. National R.R. Passenger Corp., 721 F.Supp. 80, 83 (E.D.Pa.1989)). "In fact, the lack of objections may well evidence the fairness of the Settlement."

Id. (citing In re PaineWebber Ltd. Partnerships Litig., 171 F.R.D. 126 (S.D.N.Y.); Schwartz v. Novo Indus. A/S, 119 F.R.D. 359, 363 (S.D.N.Y.1988)).

Plaintiffs' Counsel have received **no** objections from the class and **no** opt-outs. This factor strongly favors final approval here. See In re Mexico Money Transfer Litig., 164 F.Supp.2d 1002, 1021 (N.D. Ill. 2000) (holding that the fact that more than "99.9% of class members have neither opted out nor filed objections . . . is strong circumstantial evidence in favor of the settlement"); cf. The Authors Guild, et al. v. Google, Inc., 770 F.Supp.2d 666, 676 (S.D.N.Y.2011) (denying approval of Google's class action, in part because "an extremely high number of class members—some 6,800—opted out" and because "the objections [were] great in number").

### 4. The Stage of Litigation and Completion of Discovery Strongly Favor Final Approval.

This factor determines "how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee, 616 F.2d 305, 325 (7th Cir.1980). Discovery is sufficient if it allows a court to "intelligently make . . . an appraisal of the Settlement." In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (quotation marks omitted). Here, the Parties have conducted extensive written discovery, exchanging hundreds of pages of documents, and performed extensive data analysis and calculations which allowed Plaintiffs to establish a clear basis for assessing deductions made from Settlement Class Members' pay and to estimate their damages in this case. This is "sufficient" to determine the fairness and adequacy of settlement at this stage. In re M3 Power Razor, 270 F.R.D. 4563 (D. Mass. 2010) (finding discovery sufficient where defendant produced 100,000 documents and pertinent financial information).

11

### 5. The Proponents of the Settlement Are Highly Experienced in Similar Litigation.

Plaintiffs are represented by highly experienced and competent counsel who have litigated numerous wage and hour cases aggressively and successfully. Lead counsel, Attorney Harold Lichten, has litigated, tried, and settled numerous class action wage-and-hour cases in Massachusetts and is a recognized expert in labor and employment law in Massachusetts. See Lichten Decl. ¶¶ 2, 4-7. Plaintiffs' Counsel are also uniquely experienced in wage and hour class action litigation on behalf of delivery drivers like Plaintiffs. In addition to this case, Attorney Lichten has successfully represented couriers and delivery drivers in a number of wage-and-hour class actions.[3] See, e.g., Portillo v. Nat'l Freight, Inc., 606 F. Supp. 3d 72 (D.N.J. 2022) (holding on summary judgment that defendants misclassified a class of delivery drivers under the NJWPL's ABC test); Carrow v. FedEx Ground Package System, Inc., No. 16-3026 (D.N.J.), Dkt 161 (approving class action settlement on behalf of FedEx drivers who asserted claims under New Jersey wage laws); DaSilva v. Border Transfer of MA, Inc., 296 F. Supp. 3d 389, 405 (D. Mass. 2017) (granting class certification in truck driver misclassification case and stating of Attorneys Lichten and Weber: ""[t]he plaintiffs' attorneys are highly experienced in class-action employment litigation and specifically in Wage Act misclassification claims"); Badia v. HomeDeliveryLink,

---

[3] See also Costello v. BeavEx, Inc., 810 F.3d 1045 (7th Cir. 2016) (representing class of misclassified delivery drivers); Scantland v. Jeffry Knight, Inc., 721 F.3d 1308 (11th Cir. 2013) (representing class of misclassified cable installers seeking unpaid wages); Hager v. OmniCare, Inc., No. 5:19-cv-00484, Dkt. 124 (S.D.W.V. Nov. 15, 2021); Taveras v. XPO Logistics, Inc., No. 3:15-cv-01550, Dkt. 123 (D. Conn. Aug. 11, 2017); Brandon v. 3PD, Inc., No. 13-3745, Dkt. 151 (N.D. Ill. Jan. 26, 2016); Martins v. 3PD, Inc., 2014 WL 1271761 (D. Mass. Mar. 27, 2014); Anderson v. Homedeliveryamerica.com, Inc., 2013 WL 6860745 (D. Mass. Dec. 30, 2013) (class of delivery drivers were employees under Massachusetts law); Somers v. Converged Access, Inc., 911 N.E.2d 739 (Mass. 2009) (landmark decision of the Massachusetts Supreme Judicial Court on independent contractor misclassification); Oliveira v. Advanced Delivery Systems, Inc., C.A. No. 09-1311 (Mass. Super. Ct. 2009); Sherman v. American Eagle Express, Inc., d/b/a AEX Group, C.A. No. 2:09-00575-JS; (E.D. Pa. 2009); Fucci v. Eastern Connection Operating, Inc., C.A. No. 2008-2659 (Mass. Super. Ct. 2008); Chambers v. RDI Logistics, 476 Mass. 95 (2016).

Inc., 2015 WL 5666077, at *8 (D.N.J. Sept. 25, 2015). Attorney James Simpson likewise has litigated, tried and settled numerous class action wage-and-hour cases in Massachusetts since 2007. Attorney Simpson has also successfully represented delivery drivers in numerous wage-and-hour class actions.

Mr. Lichten's firm is likewise experienced in the mechanics of class settlement administration. In the dozens of other cases the firm has settled as class actions, there have been thousands of class members overall requiring active engagement in processing claims from these settlements and distributing settlement proceeds. Plaintiffs' Counsel's opinion that the proposed settlement is fair and reasonable under the circumstances should, therefore, be accorded considerable weight.

## VI. THE PROPOSED SERVICE AWARDS SHOULD BE APROVED

The settlement proposes service awards of $10,000.00 each for Plaintiffs Frederic Roland, Jose Antonio Ramos Lima, Flavio Lima Herculano, Altino Barros and Jailson Pires. Dkt. 29 ¶ 12(B). The proposed service awards are fair and reasonable, given that Plaintiffs initiated the lawsuit, and it was through their initiative that this recovery was obtained. Plaintiffs have provided invaluable assistance to Plaintiffs' Counsel over the course of this litigation, including providing documents, and responding to discovery.

Courts have widely recognized that incentive payments serve an important function in promoting enforcement of state and federal law by private individuals, while also encouraging class action settlements. See In re Relafen Antitrust Litig., 231 F.R.D. 52, 82 (D. Mass. 2005); In re Compact Disc Minimum Advertised Price Antitrust Litig., 292 F. Supp. 2d 184, 189 (D. Me. 2003); see also Sheppard v. Consol. Edison Co. of N.Y., Inc., 2002 WL 2003206, at *5-6 (E.D.N.Y. 2002) (collecting cases approving incentive payments). As Judge Hornby recognized,

awards in employment cases were generally higher than in other types of cases and recent awards averaged around $15,000, but could reach $30,000 and higher. Scovil v. FedEx Ground Package Sys., Inc., 2014 WL 1057079m at *6 (D. Me. Mar. 14, 2014) (citing Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study,* 53 UCLA L. Rev. 1303, 1308 (2006); Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir.1998) ($25,000 incentive award approved for one named plaintiff; total settlement was for $14 million plus structural changes to the pension fund)); see also In re Janney Montgomery Scott LLC Fin. Consultant Litig., 2009 WL 2137224, *12 (E.D. Pa. July 16, 2009) (approving $20,000 payments to three named plaintiffs in complex FLSA case)).[4]

## VII. PLAINTIFFS' FEE REQUEST IS REASONABLE AND SHOULD BE GRANTED

### A. Plaintiffs' Counsel Performed Significant Work to Bring this Case to a Successful Resolution

Plaintiffs' Counsel seek fees and costs in the amount of $265,000.00 (33 percent of the gross settlement amount). This fee was agreed to by the Parties. Moreover, Plaintiffs' Counsel took this case on a contingency-fee basis, where the Plaintiffs agreed to pay a one-third fee, thus risking the possibility that they would have recover no fees. The requested fee will cover all costs incurred to

---

[4] One of the reasons for finding higher incentive payment in employment cases, including wage and hour cases, is the issue of retaliation. See, e.g., Overka v. Am. Airlines, Inc., 265 F.R.D. 14, 24 (D. Mass. 2010) ("class adjudication is superior in the employment context because fear of employer retaliation may have a chilling effect on employees bringing claims on an individual basis" and held that class action "is a superior method for adjudication of the controversy"); Perez v. Safety-Kleen Systems, Inc., 253 F.R.D. 508, 520 (N.D. Cal. 2008) (concluding class action was superior because, *inter alia*, "some class members may fear reprisal"); Guzman v. VLM, Inc., 2008 WL 597186, at *8 (E.D.N.Y. 2008) (noting "valid concern" that "many employees will be reluctant to participate in the action due to fears of retaliation"). This same consideration makes enhancement payments even more crucial in employment class action settlements. As one court has observed: "[Enhancement] awards are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." Frank v. Eastman Kodak Co., 228 F.R.D. 174, 187 (W.D.N.Y. 2005).

date by Plaintiffs' Counsel, as well as the significant costs Plaintiffs' Counsel will incur in the next several months, administering the settlement fund, updating settlement share distributions, taking care of all mailings, and fielding inquiries from Settlement Class Members. See Lichten Decl. ¶ 27. To date, Plaintiffs' Counsel have paid for the costs associated with half of the mediation fees, and fees related to filing and investigating this case, and notice mailing. Plaintiffs' Counsel's ability to administer the class settlement without hiring a class action settlement administrator will result in a substantial savings, which can then be more properly used to pay distribution shares to Settlement Class Members.

Plaintiffs' Counsel have devoted significant time and resources to this case over the past year, and have achieved an extremely favorable settlement for the class. Counsel have spent a total of Based on a review of the time records for Plaintiffs' counsel who worked on this case, I estimate that Plaintiffs' Counsel worked approximately **165** hours on this case, for a lodestar of **$82,500.00**. Lichten Decl. ¶ 26. Plaintiffs' Counsel have also incurred costs in the amount of $**6,484.80** to date in prosecuting this case. Id. Plaintiffs' Counsel have reviewed thousands of pages of documents and extensive spreadsheets produced by Defendants, and have prepared a detailed damages analysis in advance of mediation. Id. ¶ 24. Plaintiffs' Counsel have also prepared and answered written discovery; and prepared for and participated in two mediation sessions. Id. ¶ 25.

**B.  Plaintiffs' Fee Request is Reasonable under the Percentage of the Fund Approach**

Courts generally favor awarding fees from a common fund based upon a percentage of the fund. As the Supreme Court has explained:

> This Court has recognized consistently that a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his

15

> client is entitled to reasonable attorneys' fee from the fund as a whole . . . jurisdiction over the fund involved in the litigation allows the Court to prevent . . . inequity by assessing attorneys' fees against the entire fund thus spreading fees proportionally among those benefited by the suit.

Belling Company v. Van Gemert, 444 U.S. 472, 478 (1980). Assessing attorneys' fees as a percentage of the common fund is favored over the lodestar method because it prevents creating an incentive for attorneys to needlessly spend as many hours as possible on the litigation, encourages capable plaintiffs' attorneys to litigate complex, risky cases and is easier to administer.[5] The percentage of the fund approach "offers significant structural advantages in common fund cases, including ease of administration, efficiency, and a close approximation of the marketplace." In re Thirteen Appeals, 56 F.3d at 308.

While the First Circuit has not articulated a specific set of factors to use in determining the reasonableness of a percentage-of-the-fund award, courts in this District have applied the following factors:

> (1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations, if any.

In re Lupron Mktg. and Sales Practices Litig., 2005 WL 2006833, at *3 (D. Mass. Aug. 17, 2005); see also Third Circuit Task Force, Court Awarded Attorneys Fees, 108 F.R.D. 237, 255–256 (1985); Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50 (2d Cir.2000).

---

[5] See In re Puerto Rican Cabotage Antitrust Litig., 815 F. Supp. 2d 448, 458 (D.P.R. 2011); In re Tyco Int'l, Ltd. Multidistrict Litig., 535 F. Supp. 2d 249, 265 (D.N.H. 2007); In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295, 307 (1st Cir. 1995).

An analysis of the factors listed above demonstrates that the award sought by Plaintiffs' Counsel is reasonable. Plaintiffs' Counsel seek an award of attorneys' fees and costs in the amount of $265,000.00, which represents one-third of the total settlement amount. Plaintiffs' Counsel are highly knowledgeable and experienced in the area of class and collective action litigation, and have significant expertise in the area of misclassification. See Lichten Decl. ¶¶ 4-7. Attorney Harold Lichten has litigated, tried, and settled numerous class action wage-and-hour cases in Massachusetts and is a recognized expert in labor and employment law in Massachusetts.[6] Furthermore, Mr. Lichten's law firm, Lichten & Liss-Riordan, P.C., is a pioneer in the field of worker misclassification and has litigated and settled dozens of class action cases filed in the federal courts. See Lichten Decl. at ¶ 6. Plaintiffs' Counsel are thus leaders in this area of the law, and their experience has provided the Plaintiffs with a high degree of expertise, which contributed to a favorable resolution of their claims.

While Plaintiffs' Counsel are confident in the strength of Plaintiffs' claims, this litigation presented significant risks and obstacles. Among these, Plaintiffs had to prove that Cardinal was, in fact, their employer – a proposition which Cardinal has vigorously contested. Plaintiffs also had to successfully prove that they and other delivery drivers were subject to unlawful deductions which violated the Massachusetts Wage Act – an issue which is hotly contested by the Parties. In sum, this case presented several big hurdles to Plaintiffs' recovery, which make the settlement in this case an excellent outcome for the class of delivery drivers.

---

[6] Among other things, Mr. Lichten successfully argued the landmark case on the Massachusetts Independent Contractor Law, Somers v. Converged Access, Inc., 454 Mass. 582 (2009).

Further, a one-third attorneys' fee award in a common fund case has been consistently approved as reasonable. See, e.g., Scovil, No. 10-CV-515, Docket No. 287 (Order at p. 13-14) (awarding attorneys' fee of one-third of the settlement amount for a fee of $1.9 million); Matamoros v. Starbucks, C.A. No. 08-10772-NMG (Docket Nos. 159,169 (D. Mass. filed May 7, 2008) (approving one-third fee for settlement of claims under Massachusetts wage law); Crenshaw v. Texas Roadhouse,, Inc., et al., C.A. No. 11-10549-JLT (D. Mass. filed April 5, 2011 (Docket Nos. 53, 56) (same); Cutter v. HealthMarkets, Inc., et al., C.A. No. 10-11488-JLT (D. Mass. filed July 2, 2010) (settlement of claims for unlawful misclassification and denial of wages under Massachusetts law); Chalverus v. Pegasystems, Inc., Civ. A. No. 97-12570-WGY (D. Mass. 2000) (awarding as an attorneys' fee one-third of a more than $5 million recovery); In re Copley Pharm., Inc. Sec. Litig., Civ. A. No. 94-11897-WGY (D. Mass. 1996) (awarding one-third of a $6.3 million settlement fund); In re Picturetel Corporation Sec. Litig., Civ. A. No. 97-12135-DPW (D. Mass. Nov. 4, 1999) (approving award of one-third of a $12 million settlement fund); Zeid v. Open Environment Corp., Civ. A. No. 96-12466-EFH (D. Mass. 1999) (awarding a fee of one-third of a $6 million settlement). Given this precedent, approving a one-third recovery for attorneys' fees and costs in this class action case, which includes all costs and expenses, is reasonable.

## VII. CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that this Court grant final approval of this proposed settlement, enter the proposed order submitted herewith, and allow Plaintiffs to distribute the settlement as described herein.

DATED: October 24, 2024

Respectfully Submitted,
FREDERIC ROLAND,
JOSE ANTONIO RAMOS LIMA,
FLAVIO LIMA HERCULANO, ALTINO BARROS, and JAILSON PIRES
on behalf of themselves and all others similarly situated,

By their attorneys,

/s/ Olena Savytska
Harold L. Lichten BBO# 549689
Olena Savytska BBO# 693324
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994 5800
hlichten@llrlaw.com
osavytska@llrlaw.com

James W. Simpson
Law Offices of James W. Simpson, Jr., P.C.
One Clark's Hill Office Park
Suite 102
Framingham, MA 01702
508-872-0002
jwsimpson11@verizon.net

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 24, 2024, a copy of this document was served by electronic filing on all counsel of record.

/s/Olena Savytska
Olena Savytska